McClelland, et al. *v.* Bank of Clarksdale, Exr.

No. 41441        April 4, 1960        119 So. 2d 262

558

*Maynard, Fitzgerald & Maynard,* Clarksdale; *Watkins, Pyle, Edwards & Ludlam,* Jackson, for appellants.

560

*Roberson, Luckett & Roberson,* Clarksdale, for appellees, H. L. Weatherall, et als.

ETHRIDGE, J.

A petition was filed for construction of a will jointly executed by husband and wife. The husband predeceas-

ed his wife, and the bequests and devises by the husband gave his wife a life estate with unlimited power of disposition, with a remainder in named takers. She did not exercise the power. Some of the remaindermen predeceased the life tenant. The principal questions are (1) whether the unlimited power of disposition enlarged the widow's life estate to one in fee simple, and (2) if not, whether the will created vested or contingent remainder estates in the remaindermen who predeceased the life tenant. The chancery court correctly held that the widow received only a life estate, and the remainders in the second takers vested at testator's death, so we affirm the trial court's decree.

In 1932 W. B. Barr and his wife, Mae Suddoth Barr of Clarksdale executed a "joint last will and testament". W. B. Barr died in 1933. Mrs. Barr lived until 1957. The joint will was probated in 1933, after the death of W. B. Barr, and his estate was administered. After the death of Mrs. Barr in 1957 the joint will was probated as her will, and the Bank of Clarksdale served as executor. In August, 1957 the Bank, appellee herein, petitioned the Chancery Court of Coahoma County for a construction of the will, determination of the distributees under it, and for directions to the executor.

The will of W. B. Barr and wife Mae Suddoth Barr was jointly executed by them in 1932. It consists of twenty items. It first recites that they "make, publish and declare this instrument to be jointly as well as severally, our last will and testament." Items 2, 3, and 4 state:

"ITEM 2.

The said W. B. Barr does hereby will devise and bequeath to his wife, the said Mae Suddoth Barr, his entire estate, real, personal and mixed or whatever kind and wheresoever located for and during the term of her natural life to be held and dealt with by her as she may see fit, she to have absolute control over all of said property with power to spend or negotiate or sell any and

all of said property as she may see fit without accounting to anyone therefor, provided the said Mae Suddoth Barr shall at the date of the death of the said W. B. Barr be not incapacitated in mind or body; but in the event the said Mae Suddoth Barr shall be incapacitated as aforesaid by some misfortune, then and in that event the Bank of Clarksdale, Clarksdale, Mississippi, shall be appointed by the Chancery Court of Coahoma County, Mississippi, to take charge of and manage all of said estate for the full and complete benefit of the said Mae Suddoth Barr, and to manage and expend said estate in such a manner that the said Mae Suddoth Barr shall always be provided with every comfort and have the best attention known to Medical Science, even to the entire extinguishment of said estate, if necessary.

### ITEM 3.

"The said Mae Suddoth Barr does hereby will, devise and bequeath to her said husband, the said W. B. Barr, her entire estate, real, personal and mixed of whatever kind, character and description and wheresoever located, to have and to hold as his own unconditionally, with full power to sell, dispose of and deal with as he may see fit.

### ITEM 4.

"It is the further will and desire of both parties hereto, that in the event the said Mae Suddoth Barr shall survive the said W. B. Barr, out of any money and property remaining, at her death, the following special bequests and legacies shall be paid:"

Items 5 through 16 provide for certain bequests of money and personalty out of the remainder of the estate which may exist at the time of the death of Mae Suddoth Barr. Item 17 states:

### "ITEM 17.

Upon the death of the said Mae Suddoth Barr, we will, devise and bequeath the residue and remainder of

said estate, real, personal and mixed, remaining after the payment of the above mentioned bequeaths, to the parties hereinafter mentioned in this item of this will, and in the proportions herein set out, which proportionate parts of said residue and remainder shall be arrived at and given as follows:—''

The second paragraph of Item 17 bequeaths to named relatives of Mrs. Barr, including Mrs. Angie McClelland and Miss Bernie Suddoth, appellants, a total of approximately one-half of the residuary estate remaining at the death of Mrs. Barr.

The third paragraph of Item 17 states, ''The remaining half of said sum arrived at by adding to the value of said resdue and remainder, the amount of said bequests as hereinbefore set out in this item, we give, devise and bequeath as follows;—'' The succeeding fourth paragraph of Item 17 bequeaths to named relatives of Mr. Barr approximately one-half of the remainder estate. The fifth and last paragraph of Item 17 provides: ''But it is our will and desire, and we so direct that none of the bequests or legacies herein made or created and named items 5 to 17, both inclusive, shall be valid or payable unless the said Mae Suddoth Barr shall survive the said W. B. Barr; in case the said W. B. Barr shall survive the said Mae Suddoth Barr, then and in that event he shall take the entire estate both joint and severally whether real, personal, mixed or both, free and clear of all bequests, legacies and claims.''

In brief, in Item 2 W. B. Barr devised and bequeathed to his wife a life estate in all of his property, with an unlimited power of disposition. In Item 3 Mrs. Barr devise and bequeathed to her husband her entire estate in fee simple.

Item 4 states that, if Mrs. Barr survives her husband, certain specific bequests are made in Items 5 through 16 ''out of any money and property remaining, at her death.''

Item 17 is the residuary clause in W. B. Barr's will, in the event his wife, the life tenant, survived him. It conveyed remainder estates for one-half of the residue to named relatives of Mrs. Barr, and one-half to named relatives of Mr. Barr.

The real estate consists of approximately 450 acres of farm land in Coahoma County and a residence in Clarksdale. The parties stipulated this was the property of W. B. Barr at the time of his death, and was not disposed of by Mrs. Barr during her lifetime. They were not survived by any children or descendants of children. It was further stipulated that the petition for construction of the jointly executed will should be considered as one for the construction of the will of W. B. Barr as well as Mrs. Barr; and that the property disposed of by the will may be treated as belonging to W. B. Barr at the time of his death. No construction of her will was necessary, since she had no property at her death on which the will operated.

The Bank of Clarksdale is one of the appellees. Another group of appellees may be designated as the "Barr and Weatherall heirs". Mrs. W. A. Weatherall, one of the beneficiaries in Item 17, was a first cousin of Mr. Barr. She died in 1939, six years after testator's death. She was survived by four children who may be called herein the "Weatherall children," and who are appellees. Dr. Will Barr, a brother of Mrs. Weatherall and testator's first cousin, had two children, Dr. Frank Barr and Mildred Barr, both of whom survived W. B. Barr. Dr. Frank Barr died in 1953 leaving as his sole heirs his widow and daughter, who assigned their interests in the estate to Mildred Barr. She is also a legatee in the remainder estate created in Item 17. Hence the Weatherall and Barr heirs are testator's only surviving relatives through his father. They are appellees, claiming in the remainder estate.

The other appellees may, for brevity, be designated as the Dabney heirs and the Carson heirs. They are

related to Mr. Barr on his mother's side, and are claiming under the remainder estate created in Item 17.

The appellants, Mrs. Angie Suddoth McClelland and Miss Bernie Suddoth, are sisters of the deceased, Mrs. Mae Suddoth Barr, wife of testator and are Mrs. Barr's sole heirs at law. Under Item 17 of the will, they receive in the remainder estate approximately one-half of the total estate.

## II.

Appellants argue that the residuary bequests under Item 17 were not testamentary dispositions by W. B. Barr; and that, construing the will as a whole and in the light of circumstances surrounding its execution, testator devised the fee simple title to his wife. Hence, appellants say, the devises and bequests were testamentary dispositions by Mrs. Barr only, and all of them lapsed, except as to certain named living appellees or their successors, because of the deaths of the holders of the lapsed bequests prior to the date of death of testatrix, Mrs. Barr. So it is contended Mrs. Barr died intestate as to these legacies, and appellants, her sole heirs at law, inherited them.

The fact that both of these parties jointly executed the 1932 will does not affect the principle that what is involved here is the will of Mr. Barr. Hill v. Godwin, 120 Miss. 83, 81 So. 790 (1919), appears to be the only Mississippi case construing a jointly executed will. The court there held that such a document constitutes the separate will of each of those executing it, and, on the death of each, it may be probated as a will. Its legal effect is separate and distinct, and not joint. The declared intentions of each testator affect only his own property or his share in joint property. In the instant case, it is undisputed that the property involved in this litigation was that of Mr. Barr.

Hill v. Godwin is in accord with the general weight of authority. In short, a ''joint will'' is a single testamentary instrument constituting the wills of two

or more persons, and jointly executed by them as their respective wills. 97 C. J. S., Wills, Secs. 1364-1366; 57 Am. Jur., Wills, Sec. 680-687; 1 Page on Wills (3d Ed., 1941), Secs. 101-109; Anno., 169 A. L. R. 9 (1947). Palmer v. Riggs, 209 Miss. 127, 46 So. 2d 86 (1950), appears to be the only other Mississippi case pertaining to joint wills. It was there held that an attempted jointly executed instrument, which provided that it should not become effective until the death of the survivor, was not a valid will and was not subject to probate. This is a recognized exception to the usual validity of such instruments. I Page on Wills, Sec. 105. Although the instant will was jointly executed, we are here concerned with the construction of the separate will of W. B. Barr incorporated in this jointly executed instrument.

Moreover, the manner of its execution does not assist in determining whether the will gave Mrs. Barr a life or a fee simple estate. That issue is determined largely by the particular provisions of Item 2. It devises and bequeaths to Mrs. Barr the testator's estate "for and during the term of her natural life," with an unlimited power of disposition, which she did not exercise. Item 17 provides that, upon the death of Mrs. Barr, testator devised and bequeathed the residue of the estate remaining after the payment of named bequests to the thereafter named parties. A plain reading of these provisions shows that testator gave Mrs. Barr only a life estate, with a power of disposition, and a remainder in the parties named in Item 17.

██ A life estate expressly created by the language of an instrument will not be converted into a fee or any other form of estate greater than a life estate merely by reason of there being coupled with it a power of disposition, however general or extensive. ██ This well-recognized rule has been followed consistently in the Mississippi cases. Stated differently, where an estate for life with remainder over is given, with the power of disposition in fee of the remainder annexed, the

limitation for the life of the first taker will control, and the life estate will not be enlarged to a fee, notwithstanding the power of the life tenant to dispose of the fee. 33 Am. Jur., Life Estates, etc., Secs. 21-24; 1 A. L. I., Restatement of the Law of Property, Sec. 111; Rail v. Dotson, 14 S. & M. 176 (Miss. 1850); Andrews v. Brumfield, 32 Miss. 107 (1856); Jones v. Stamps, 120 Miss. 60, 81 So. 651 (1919); Warren v. Ingram, 96 Miss. 438, 51 So. 888 (1910); Murdoch v. Murdoch, 97 Miss. 690, 53 So. 684 (1910); Rives v. Burrage, 110 Miss. 789, 70 So. 893 (1916); Cf. Kyle v. Wood, 227 Miss. 723, 86 So. 2d 881 (1956); and Vaughn v. Vaughn, 238 Miss. 342, 118 So. 2d 620.

Appellants also assert that appellees failed to offer sufficient evidence of extrinsic facts and circumstances to support a finding that testator intended to vest in Mrs. Barr only a life estate. This argument is untenable, since the express terms of the will require that construction.

## III.

██ ██ It is further argued that, if Mrs. Barr received only a life estate with remainders to those named in Item 17, nevertheless these remainder estates were contingent on survival, by each of the named remaindermen, of Mae Suddoth Barr; that a number of these "contingent" remaindermen died prior to the death of Mrs. Barr, and in those instances the remainders terminated and lapsed. The will did not dispose of those interests, which were inherited by Mrs. Barr, it is said, and upon her death intestate as to them, her sisters and sole heirs at law, the appellants, inherited them. The clause creating the remainders, Item 17 of the will, does not indicate any intention of the testator, W. B. Barr, that they should be contingent upon the remaindermen surviving Mrs. Barr's life estate. The last paragraph of Item 17 would tend to exclude any such inference, since it states that the legacies in Items 5 to 17 should not be valid unless Mrs. Barr survived her

husband. The fact of survivorship in that circumstance was in testator's mind, and, presumably, if he had desired to provide that the legatees in Item 17 must survive the life tenant, he would have said so. On the contrary, he made no such limitation on the remainders, but simply bequeathed to the named parties the proportions therein stated.

█ █ This conclusion is particularly required in the light of the recognized principle that the law favors the vesting of interests, and an interest will be held to be contingent only where testator's intention to that effect is clearly shown. Between two or more reasonably possible periods for vesting, preference will be given to the earlier time, unless a contrary intention appears from the will. 3 Page on Wills, Sec. 1259. The same text in Sec. 1260 states: "An interest is vested if one is in being who is certain to take in possession if he lives until the particular estate determines. The fact that he may die before he takes in possession does not make the interest contingent, unless survival is made a condition precedent."

The appellees clearly come within these rules. The will did not make survival by the remaindermen of the life tenant a condition precedent. See also Ibid., Sec. 1261; 3 Am. Jur., Life Estates, Etc., Secs. 66, 67, 108, 110.

█ █ A remainder estate is not rendered contingent by the uncertainty of the date of enjoyment. █ █ The latter does not present an immediate vesting. █ █ The uncertainty which distinguishes a contingent remainder is the uncertainty of the right and not of actual enjoyment. 96 C. J. S., Wills, Sec. 951. █ █ Moreover, a gift of a life estate with remainder to a named person creates a vested remainder on the death of the testator. 33 Am. Jur., Life Estates, etc., Sec. 115; 96 C. J. S., Wills, Sec. 931(b), p. 387. The Mississippi cases are in accord with these principles. Edwards v. Gibbs, 39 Miss. 166 (1860); Tippin v. Coleman, 59 Miss. 641

(1882) ; McDaniel v. Allen, 64 Miss. 417, 1 So. 356 (1887). See also Doe v. Considine, 6 Wall. 458, 18 L. Ed. 869 (1868).

In summary, the will of W. B. Barr created vested remainders on the death of the testator, with the enjóyment of those estates to take place at the death of the life tenant. Accordingly, although some of the remaindermen who were living at testator's death predeceased Mrs. Barr, the life tenant, their vested remainders were inherited by their heirs or devisees. The appellees therefore inherited and received vested remainders, as the chancery court decided. Contrary to appellants' contention, there was no lapsing of these devises and legacies and no inheritance of them by the appellants as the heirs of Mrs. Barr. The appellees, who are claiming in part under vested remaindermen who predeceased Mrs. Barr, were properly held to be vested with the estates devised by W. B. Barr in Item 17 of his will.

Affirmed.

*McGehee, C. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.