OLD LADIES HOME ASSOCIATION *v.* PLATT

No. 43279          March 15, 1965          172 So. 2d 770

*Green, Green & Chaney,* Jackson, for appellant.

*Curtis Breland,* Leakesville, for appellee.

LEE, C. J.

Height W. Platt filed his bill of complaint against Mrs. Lela Byers and Old Ladies Home Association, a corporation, seeking to have himself adjudged to be the owner of a two-sixths undivided interest in the lands in question and also the owner of the remaining undivided four-sixths interest therein, subject only to the right of Mrs. Lela Byers to occupy, as long as she desired and during her lifetime, the home thereon, together with the curtilage of a chicken house and out-houses thereto appertaining. He also prayed that the court would cancel all claims which she and the Old

Ladies Home Association might have thereto as clouds on his title. The lands in question were described as the W½ of NE¼ and E½ of NW¼ of Section 11, Township 4 North, Range 5 West in Greene County, Mississippi.

As shown by the bill of complaint and the exhibits thereto, the complainant deraigned his title, showing it out of the United States of America, and that finally, through mesne conveyances, on November 21, 1923, title became vested in William H. Byers and his wife, Annie R. Byers, as tenants in common. During the year 1931, Annie R. Byers died intestate, leaving as her sole heirs William H. Byers, husband, and two children, Gladys I. Byers and John B. Byers. Several years later, the surviving husband contracted another marriage. This wife was Lela Byers or Mrs. Lela Byers. On November 24, 1943, William H. Byers died testate. His last will and testament, after first requiring the payment of his just debts, provided as follows:

"I give, devise and bequeath to my beloved wife, Leilia I. Byers, all the residue of my estate, real, personal, or mixed, of which I shall die possessed: to be hers during her lifetime, and to use the same for her personal confort and benefit, as she may see fit and proper, without hinderance or trouble from any one. and after her death I devise, bequeath as follows, to-wit:

TO: GLADUYS, I. BYERS

I, Give, devise and bequeath the West-Half of the Northeast Quarter (W½ of NE¼), Section Eleven (11), Township Four (4) North, Range Five (5) West, Greene County, Mississippi.

TO: JOHN BYERS

I, Give, devise and bequeath the East-Half of the Northwest Quarter (E½ of NW¼), Section Eleven (11), Township Four (4) North, Range Five (5) West. Greene County, Mississippi."

Thereafter on April 26, 1947, John B. Byers, by deed, conveyed to Edward Lee Loper and Ruby Loper all of his interest in the E½ NW¼ of said Section 11; and subsequently, on April 30, 1947, Mrs. Gladys I. Byers Van Horn, the other surviving child, by deed, conveyed to the same grantees all of her interest in W½ of NE¼ of said Section 11.

On January 14, 1952, Edward Loper and wife Ruby, by deed, conveyed and warranted both parcels of said land to Forest J. Lomax and wife, Eva Marie Lomax. On January 18, 1952, by duly acknowledged instrument, Forest J. Lomax and wife, Eva Marie Lomax, and Mrs. Lela Byers entered into a written agreement to the effect that the Lomaxes had purchased and then owned, subject to a life estate of Mrs. Lela Byers, the two heretofore mentioned parcels of land; that the parties had mutually agreed that Mrs. Lela Byers was to occupy the house on said lands, together with the curtilage of a chicken yard and outhouses so long as she desired and during her lifetime; that the Lomaxes were to have possession of the place with the right to improve it, cultivate it, and to have general control thereover, as if their possessory rights were in full force and effect, subject only to the above mentioned rights of Mrs. Lela Byers. In consideration of the rights so granted to them, the Lomaxes therein agreed to furnish Mrs. Byers, as long as she lived, what groceries, medicines, general welfare care, fuel and other necessities as she needed them, and to see that she would have a Christian burial at her death. Mrs. Byers therein covenanted that she had revoked any and all wills theretofore made, particularizing the one to Ruby and Edward Loper, which does not appear in the record. It was further agreed that the Lomaxes would receive whatever personal property Mrs. Byers might own at the time of her death.

Although the deed to the Lomaxes were dated January 14, 1952, and their contract with Mrs. Lela Byers

was dated January 18, 1952, both instruments were filed for record on the same date, January 23, 1952, and were thereafter recorded on January 31, 1952.

Later, on April 9, 1955, the Lomaxes, by deed, conveyed this land to Empry B. Platt; and, in like manner, Emory B. Platt, on April 23, 1955, conveyed the same to Height W. Platt. Subsequently on March 18, 1958, Mrs. Lela Byers, by what was denominated a confirmatory deed, in consideration that she would receive, during the balance of her life, lodging, board, and medical maintenance and appropriate interment from the Old Ladies Home Association — it appearing that she had been admitted thereto — conveyed the lands to the Association under the stated conditions for repayment of the expense in case of her withdrawal from the Home.

Defendant, Old Ladies Home Association, filed its demurrer, setting up several grounds; and the guardian ad litem, appointed by the court for Mrs. Lela Byers, non compos mentis, joined therein. The demurrer was overruled; and the order thereon granted an interlocutory appeal, "to settle all principles, as appears from the opinion of the learned Chancellor . . ."

The appellants, in contending that the court was in error in overruling their demurrer, base their argument fundamentally on the proposition that (1) a devise of land to one for life with authority to do with the same, at his discretion, vests the devisee with a life estate with power to sell the fee; and that (2) the deed or will by Mrs. Byers, in consideration of support and maintenance which she did not receive, should be cancelled, or a lien impressed on the property for her support and maintenance.

Looking at these propositions in reverse order, the Court deals with No. (2) first. This contention calls for affirmative relief and cannot be reached on demurrer. The case of Wilson v. Combs, 203 Miss. 286, 33

So. 2d 830 (1948), with the many cases there cited, require an emphatic nay to this question.

■■■ On proposition No. (1), in the case of Magee v. Holmes, 220 Miss. 49, 70 So. 2d 60 (1954), the will to Mrs. Fortinberry provided for her to take the real and personal property — including money — for the term of her natural life, with authority to use, dispose of, or consume. That part which was not used, disposed of, or consumed at the death of the survivor, was to go as thereafter designated. The opinion held that the words, as designated above, related only to the "money or personal property", and not to "the real property belonging to the decedent;" and that she had only a life estate in the realty.

In the case of Vaughn, Executrix, v. Vaughn, 238 Miss. 342, 118 So. 2d 620 (1960), the testator died, leaving his widow, a second wife, and three adult children. He devised to his widow a life estate in their residence, certain lands and personal property, with remainder in equal parts to his three children. The will also bequeathed to the widow "the entire residue of my property of every kind, and any of same that is not consumed by her in her lifetime at her death to go to my said three children. . ." The trial court held, under the testator's intent to use the money and for the widow's support, it should allow $3,000 per annum to her for that purpose; and this action was affirmed.

The above opinion, at page 350-1, cited with approval 33 Am. Jur. *Life Estates, Etc.* section 39, as follows: "Limitation Over of What Remains After Indefinite Gift Coupled with Limited or Qualified Power of Disposal. — It is a general rule, followed by the courts with practical unanimity, that where there is a devise or bequest to one in general terms only, expressing neither fee nor life estate, and a subsequent limitation over of what remains at the taker's death, if there is also given to the taker an express or implied power

of disposition which is not absolute, or is limited or restricted as to its exercise, the devine is construed to pass a life estate only. . ."

Under the language of the particular instrument, the Court, at pages 351-2, also said: "In brief, Mrs. Vaughn has a life estate with a limited power to invade the corpus for her necessary support and maintenance, and appellees, the children, have a remainder estate. Somewhat analogous is Howell v. Howell, 157 Miss. 15, 127 So. 566 (1930), where a similar construction was adopted. Ordinarily a bequest of money for life with remainder over to another is a bequest of the interest derived from the money. However, in both *Howell* and the instant case the manifest intention of the testator was that the widow who is the life tenant should receive a reasonable amount for her support and maintenance where the interest from the life estate is not sufficient for that purpose." Citing Howell v. Howell, supra; Hill v. Godwin, 114 Miss. 324, 75 So. 122 (1917), and Martin v. Martin, 69 Miss. 315, 13 So. 267 (1891). *Cf.,* Old Ladies Home Association v. Miller, 217 Miss. 187, 63 So. 2d 786 (1953); Cross v. O'Cavanagh, 198 Miss. 137, 21 So. 2d 473 (1945); Anno. 17 A.L.R. 2d 7 (1951).

In McClelland v. Bank of Clarksdale, 238 Miss. 557, 119 So. 2d 262 (1960), the testator predeceased his wife. It was contended that, by item 2, he had given her a life estate with unlimited power of disposition, with the remainder in the named takers. The trial court had held that the widow received only a life estate, and that the remainder became vested in the named takers, after her death. The opinion, at pp. 569-70, said: "A plain reading of these provisions shows that testator gave Mrs. Barr only a life estate, with a power of disposition, and a remainder in the parties named in Item 17.

"A life estate expressly created by the language of an instrument will not be converted into a fee or any

other form of estate greater than a life estate merely by reason of there being coupled with it a power of disposition, however general or extensive. This well-recognized rule has been followed consistently in the Mississippi cases. Stated, differently, where an estate for life with remainder over is given, with the power of disposition in fee of the remainder annexed, the limitation for the life of the first taker will control, and the life estate will not be enlarged to a fee, notwithstanding the power of the life tenant to dispose of the fee. 33 Am. Jur., Life Estates, etc., Secs. 21-24; 1 A.L.I., Restatement of the Law of Property, Sec. 111; Rail v. Dotson, 14 S. & M. 176 (Miss. 1850); Andrews v. Brumfield, 32 Miss. 107 (1856); Jones v. Stamps, 120 Miss. 60, 81 So. 651 (1919); Warren v. Ingram, 96 Miss. 438, 51 So. 888 (1910); Murdoch v. Murdoch, 97 Miss. 690, 53 So. 684 (1910); Rives v. Burrage, 110 Miss. 789, 70 So. 893 (1916); Cf. Kyle v. Wood, 227 Miss. 723, 86 So. 2d 881 (1956); and Vaughn v. Vaughn, 238 Miss. 342, 118 So. 2d 620.''

It follows that the learned chancellor was correct in overruling the demurrer, and the Court is not in position to give an advisory opinion on an undeveloped affirmative defense.

Needless to say that, in the state of the record, on a remand, the appellants, under proper pleadings, have the right and privilege to file their answer, and develop any and all of their defenses.

Since the argument of this cause, and consideration by the Court, Mrs. Lela Byers died. But, previous to her death, it appears that she had conveyed all right, title and interest in the property to Old Ladies Home Association. A stipulation by counsel, representing the parties to this litigation, has been filed in this Court so that the case may be decided.

Consequently, it follows that the decree of the trial court should be and it is affirmed, and the cause is remanded for further proper proceedings.

Affirmed and remanded.

*Ethridge, Brady, Patterson and Inzer, JJ.,* concur.